# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | Civ. No. 11-md-2262 (NRB) |

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| 33-35 GREEN POND ROAD ASSOC., LLC, on behalf of itself and all others similarly situated, | Civ. No. 12-cv-5822 (NRB) |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA CORPORATION, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| COURTYARD AT AMWELL II, LLC, et al., on behalf of themselves and all others similarly situated, | Civ. No. 12-cv-6693 (NRB) |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA CORPORATION, *et al.*, | |
| Defendants. | |

## NON-DEFENDANT OTC PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH HSBC BANK PLC AND FOR <u>APPOINTMENT OF SETTLEMENT CLASS COUNSEL</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL HISTORY .............................................................................. 2

III.    OVERVIEW OF SETTLEMENT NEGOTIATIONS AND
        SETTLEMENT TERMS. ................................................................................. 4

IV.     PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE. ......... 6

        A.     The standard for preliminary approval. ............................................. 6

        B.     The Settlement is entitled to a presumption of fairness, adequacy and
               reasonableness since it was the product of arm's-length negotiations
               between experienced counsel. ............................................................ 8

        C.     When viewed through the lens of the *Grinnell* factors, the Settlement
               is substantively fair. ......................................................................... 9

               1.     The complexity, expense, and likely duration of the Litigation. .................. 10

               2.     The reaction of the Class to the Settlement. .................................... 10

               3.     The stage of the proceedings. .......................................................... 11

               4.     The risks of establishing liability and damages. ............................ 12

               5.     The risks of maintaining the Class Action through trial. ............... 13

               6.     The ability of HSBC to withstand a greater judgment. .................. 14

               7.     The reasonableness of the Settlement in light of the best
                      possible recovery and the attendant risks of litigation. ................ 14

V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE. ...... 16

        A.     Rule 23(a) requirements .................................................................. 16

               1.     Rule 23(a)(1) - Numerosity ............................................................ 16

               2.     Rule 23(a)(2) - Commonality .......................................................... 17

               3.     Rule 23(a)(3) - Typicality .............................................................. 17

               4.     Rule 23(a)(4) – Adequacy .............................................................. 18

B.      Rule 23(b)(3) requirements ......................................................................... 19

        1.      Predominance ................................................................................... 19

        2.      Superiority ........................................................................................ 20

C.      Non-Defendant OTC Plaintiffs' Counsel should be appointed
        settlement class counsel. ........................................................................... 21

VI.    PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL
       OF A NOTICE PLAN AND PLAN OF DISTRIBUTION. ................................................. 21

VII.   CONCLUSION ........................................................................................................ 22

745570.1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................16, 20, 21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................11

*Atwood v. Intercept Pharms., Inc.*,
  299 F.R.D. 414 (S.D.N.Y. 2014)......................................................................................18

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001) ............................8

*Authors Guild v. Google, Inc.*,
  No. 05 CIV. 8136 (DC), 2009 WL 4434586 (S.D.N.Y. Dec. l, 2009)..................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................15

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 CIV. 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)..............................13

*Cardiology Assocs., P.C. Pension Plan v. Nat'l Intergroup, Inc.*,
  No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987)................................13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)..............................................................................................17

*In re CitiGroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013)....................................................................................8, 14

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)................................................................*passim*

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009)......................................................................................16

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)................................................................................................16

*In re Corrugated Container Antitrust Litig.*,
  No. MDL 310, 1981 WL 2093 (S.D. Tex. June 4, 1981)..............................................15-16

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd*, 405 F. App'x 532 (2d Cir. 2010) ..........................................12

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .....................................................................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...........................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 1:13-CV-07789-LGS, 2015 WL 9952596 (S.D.N.Y. Dec. 15, 2015) ......................................22

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 814 (2017) .......................................2, 10

*In re IMAX Secs. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ...........................................................................................................18

*In re IMAX Secs. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................................8, 11, 14, 15

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .............................................................................................................16

*In re Initial Pub. Offering Secs. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................................................................7

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) .........................................................................................................17, 19, 20

*Langan v. Johnson & Johnson Consumer Cos.*,
  No. 3:13-cv-1470 (JAM), 2017 WL 985640 (D. Conn. Mar. 13, 2017)......................................18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB), 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014)...................................7, 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB), 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ...................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig. (Barclays Order)*,
  No. 11 MDL 2262 (NRB), 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016)................................*passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I")*,
  935 F. Supp. 2d 666 (S.D.N.Y. 2013), *vacated on other grounds*, 823 F.3d 759 (2d
  Cir. 2016), *cert. denied*, 137 S. Ct. 814 (2017) .........................................................................2

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR VI")*,
  No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)........................................3

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................................9

*In re Master Key Antitrust Litig.*,
  70 F.R.D. 23 (D. Conn. 1975) ...................................................................................................20

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ......................................................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................................10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..............................................................................................20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................................2

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ........................................7, 8

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
  No. 08-cv-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ..............................22

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) .......................................................................................14

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................................................10

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  No. 99 CIV 0962 (RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ......................................6

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ......................................................................................................20

*In re Telik, Inc. Secs. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................................10

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................................................12

*Tyson Foods Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ..............................................................................................................19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
  257 F.3d 256 (2d Cir. 2001) ......................................................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ......................................................................................................... 7

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................................................... 6, 21

745570.1

## I.     INTRODUCTION

Plaintiffs 33-35 Green Pond Road Associates, LLC, Courtyard at Amwell II, LLC, Greenwich Commons II, LLC, Jill Court Associates II, LLC, Maidencreek Ventures II LP, Raritan Commons, LLC, and Lawrence W. Gardner, (hereinafter, the "Non-Defendant OTC Plaintiffs") respectfully submit this memorandum in support of their motion for preliminary approval of a settlement ("Settlement" or "Settlement Agreement") between themselves and the putative Class, and defendant HSBC Bank plc ("HSBC") (together with Non-Defendant OTC Plaintiffs, the "Parties") in the above-captioned litigation (the "Non-Defendant OTC Action").[1] If approved, the proposed Settlement,[2] consisting of a $4.75 million payment and an agreement to provide significant cooperation to Non-Defendant OTC Plaintiffs, offers valuable relief to the Class and resolves this complex case against HSBC. Having overseen this case for over seven years, this Court, perhaps better than anyone, understands the complexities in this case. In addition to those complexities, this Court has expressed serious doubt as to whether the Non-Defendant OTC Plaintiffs' antitrust claims against the Defendants are currently viable. ECF No. 2372 at n.2 ("We discern no meaningful difference between the Green Pond Plaintiffs' antitrust claims and the Bondholder plaintiffs' antitrust claims, which were dismissed on efficient-enforcer grounds."). Further, the Court has dismissed HSBC as a defendant on personal jurisdiction grounds. Yet, despite these significant hurdles, the Non-Defendant OTC Plaintiffs have secured meaningful relief for their class in settling with HSBC.

At the preliminary approval stage, the Court need only determine if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreement.

[2] Non-Defendant OTC Plaintiffs incorporate by reference the Declaration of Steven J. Greenfogel ("Greenfogel Decl."), filed concurrently herewith.  The Settlement Agreement is Exhibit A to the Greenfogel Declaration.

- 1 -

affected and an opportunity to be heard" or, put another way, the Court is to make sure that the settlement is within the range of possible approval. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ IP*"). As demonstrated below, the proposed Settlement is an excellent result for the Class, is fair, reasonable and adequate and warrants preliminary approval under Rule 23(e).

## II.   PROCEDURAL HISTORY

Non-Defendant OTC Plaintiffs commenced this litigation in July 2012,[3] alleging only a single federal antitrust claim: that the BBA's U.S. Dollar LIBOR panel banks unlawfully conspired to suppress LIBOR.[4]

On August 14, 2012, the Non-Defendant OTC Actions were stayed pending resolution of motions to dismiss directed to other actions. ECF No. 205. In connection with the motions to dismiss, the Court dismissed numerous claims, including all antitrust claims. *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I")*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013), *vacated on other grounds*, 823 F.3d 759 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 814 (2017). Following *LIBOR I* (and the related *Gelboim* appeal to the U.S. Supreme Court), the Court granted the Non-Defendant OTC Plaintiffs' request that its antitrust claim be dismissed so that they could join in the Second Circuit appeal by those whose antitrust claims were dismissed by *LIBOR I*. ECF No. 1008.

Following the Second Circuit's May 2016 decision in *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 814 (2017), the Non-Defendant OTC Plaintiffs, having been remanded by the Second Circuit along with other dismissed plaintiffs, sought to proceed with their

---

[3] The Green Pond and Courtyard at Amwell complaints were filed on July 30, 2012, and September 4, 2012, respectively.  The complaints do not name the following Defendants as defined by and included in the Settlement Agreement: Citigroup Inc.; Credit Suisse AG; Credit Suisse International; Credit Suisse (USA) Inc.; HBOS PLC; Citizens Bank of Massachusetts a/k/a RBS Citizens Bank N.A.; and Société Générale S.A.  At the appropriate time, the complaints will be amended to include some, or all, of these entities.

[4] All references to LIBOR refer to U.S. Dollar LIBOR.

745570.1

cases on the same schedule as the other cases pending before the Court. On June 21, 2016, the Court denied the Non-Defendant OTC Plaintiffs' request to lift the stay, leaving the stay in place pending a ruling by the Court on the forthcoming efficient-enforcer motions.  ECF No. 1463 at p. 2. The Court decided the efficient-enforcer motions by "draw[ing] a line between plaintiffs who transacted directly with the defendants and those who did not." *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR VI")*, No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *16 (S.D.N.Y. Dec. 20, 2016). Ultimately, the Court held that "where a plaintiff's counterparty is reasonably ascertainable and is not a defendant bank, a plaintiff is not an efficient enforcer." *Id.* On that basis, the Court dismissed the claims of those who purchased their LIBOR-linked instrument from a non-Defendant bank, including the Bondholder and Schwab plaintiffs. *Id.* The Bondholder and Schwab plaintiffs (and others) appealed *LIBOR VI* and briefing on that appeal has been completed.[5] *See In re LIBOR-Based Financial Instruments Antitrust Litig.*, 17-1569 (2d Cir.). The central question to be decided by the Second Circuit—whether those who purchased LIBOR instruments from non-defendant banks can be efficient enforcers of the antitrust laws—will have an impact on the future direction of the Non-Defendant OTC Action. As a result, on May 14, 2018, the Court declined to lift the stay of the Non-Defendant OTC Action pending the Second Circuit's decision. ECF No. 2514.

On May 29, 2018, the Court partially lifted the stay to allow Non-Defendant OTC Plaintiffs to serve subpoenas on certain Non-Defendant OTC Financial Institutions[6] who possess the identity

---

[5] As of the filing of this brief, no oral argument date has been set.

[6] The Non-Defendant OTC Financial Institutions identified in the complaints are: Wells Fargo & Company; Goldman Sachs Group, Inc.; Morgan Stanley; Metlife, Inc.; U.S. Bancorp; The PNC Financial Services Group, Inc.; The Bank of New York Mellon Corporation; Capital One Financial Corporation; Ally Financial Inc.; Suntrust Banks, Inc.; BB&T Corporation; TD Bank US Holding Company; State Street Corporation; Citizens Financial Group, Inc.; American Express Company; Regions Financial Corporation; Fifth Third Bancorp; Keycorp Cleveland; Unionbancal Corporation; Northern Trust Corporation; Bancwest Corporation; M&T Bank Corporation; Harris Financial

and data relating to Settlement Class members, and to make this motion for preliminary approval. ECF No. 2529.

## III.   OVERVIEW OF SETTLEMENT NEGOTIATIONS AND SETTLEMENT TERMS

Starting in October 2017, Non-Defendant OTC Plaintiffs engaged in extensive settlement discussions with HSBC.  Greenfogel Decl. ¶ 4. On November 8, 2017, the Parties first met in-person to discuss settlement. *Id.* Following that meeting, the parties engaged in further and extensive settlement discussions. The general elements of a settlement were reached in early 2018, at which point the parties started exchanging draft settlement agreements.  Greenfogel Decl. ¶ 4. In addition to evaluating information that HSBC provided, and the evidence in the case relating to the LIBOR conspiracy, Non-Defendant OTC Plaintiffs also engaged an expert economist to assist in evaluating the Non-Defendant OTC Financial Institution market and the Non-Defendant OTC Plaintiffs' potential damages in this case. *Id.* The parties continued to engage in discussions and continued to exchange draft settlement agreements over the next several months. *Id.*

On May 18, 2018, after nearly six months of negotiations, the Parties reached an agreement and executed the Settlement. *Id.* At all times, the Parties vigorously negotiated their respective positions at arm's length. *Id.* ¶ 4. Non-Defendant OTC Plaintiffs' were well aware of the facts and

---

Corp.; and BBVA USA Bancshares, Inc.  A "Non-Defendant OTC Financial Institution" as defined by the Settlement Agreement does not include Citizens Financial Group, Inc. (a subsidiary of Defendant Royal Bank of Scotland Group PLS) and Unionbancal Corporation (a subsidiary of Defendant Tokyo Mitsubishi UFJ) because these two banks are subsidiaries of two Defendant banks and are now part of the OTC Action. *See* Settlement, ¶ 2(cc). The Defendants have sought a pre-motion conference to request leave to move under Rule 12(c), seeking a ruling that all LIBOR-instruments purchases from Defendants' subsidiaries (including these two banks) should be dismissed from the OTC plaintiffs' action on efficient-enforcer grounds. *See* ECF No. 2523. The Non-Defendant OTC Plaintiffs did not serve those two banks with subpoenas in conjunction with the HSBC Settlement, and if they remain part of the OTC Action, will not include them in any future amended complaint. However, the Non-Defendant OTC Plaintiffs reserve the right to include them in a future complaint or settlement if it were determined that purchases from these two banks were not considered within the OTC Plaintiffs' class.

745570.1

issues concerning liability and damages, pending appeals and the relative strengths and weaknesses

of each side's litigation position. *Id.*

> The Settlement is on behalf of a Class defined as:

>> All Persons that purchased or otherwise acquired in the United States
>> from a Non-Defendant OTC Financial Institution a U.S. Dollar
>> LIBOR-Based Instrument and that owned such instrument any time
>> during the Class Period.

Settlement, ¶ 3(a). The "Class Period" is defined as August 1, 2007 through May 31, 2010. *Id.*, ¶ 2(i).

A "Non-Defendant OTC Financial Institution" is defined in the Settlement as set forth in footnote

6, *supra*. The Settlement provides for a payment of $4,750,000 from HSBC. *Id.*, ¶ 2(mm). The $4.75

million Settlement Fund is non-reversionary: if the Court gives final approval of the Settlement, no

money will be returned to HSBC.  *Id.*, ¶ 11(j).

The Settlement also obligates HSBC to provide extensive cooperation with Non-Defendant

OTC Plaintiffs' Counsel. *Id.*, ¶ 14. The cooperation falls into three categories: attorney proffers,

documents/data, and testimony. *Id.* The attorney proffers cover, *inter alia*, (l) background knowledge

on HSBC's LIBOR-setting process; (2) "A detailed account of facts known to HSBC that are

relevant to the Released Claims or the allegations in Non-Defendant OTC Plaintiffs' pleadings

including, but not limited to, the alleged conduct, if any such facts exist, relating to the alleged

collusion, manipulation and suppression of U.S. Dollar LIBOR by HSBC and other panel banks,

and the individuals and entities"; (3) a description of HSBC's internal compliance policies with

respect to LIBOR; and (4) the identities of individuals with knowledge of LIBOR-related conduct.

*Id.*, ¶ 14(g)(ii).

HSBC must also provide Non-Defendant OTC Plaintiffs with transactional data and

documents relevant to the Non-Defendant OTC Action, including transactional information and

documents produced to government regulators. *Id.* ¶¶ 14(h)(iv)-(v). HSBC has also agreed to

provide relevant testimonial cooperation in the form of reasonable best efforts to provide

- 5 -

declarations and affidavits, *id.* ¶ 14(h)(vi), depositions of current and former employees, *id.* ¶ 14(h)(vii), and testimony at trial, *id.* ¶ 14(h)(viii).

In exchange for HSBC's consideration, the Released Parties shall be released of any and all manner of claims "arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Non-Defendant OTC Action or any amended complaint or pleading therein", with certain specified LIBOR Instrument exclusions, including claims related to transactions in the OTC Action, Exchange-Based Plaintiffs' Action, Bondholder Action, and Lender Action. Settlement ¶¶ 2(jj), (tt). The full text of the release provisions is set forth in the Settlement Agreement. *See* Settlement ¶¶ 2(ll), (tt).

## IV.   PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

### A.   The standard for preliminary approval.

A court assesses a proposed class action settlement to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Preliminary approval is generally the first step in a two-step process before a class action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.,* No. 99 CIV 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice," and "[o]nce preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ II*, 176 F.R.D. at 102. "Because of the two-step process, a grant of preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig. (Barclays Order)*, No. 11 MDL 2262 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) (quoting *In re Traffic Exec. Ass'n E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).

- 6 -

In determining whether to grant preliminary approval to a settlement, the inquiry involves a determination of both procedural and substantive fairness. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009). Factors include whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," *NASDAQ II*, 176 F.R.D. at 102, provides "intangible benefits, including cooperation against non-settling defendants," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014), and grants the plaintiffs repose in the face of complex, uncertain litigation, *In re Initial Pub. Offering Secs. Litig.*, 226 F.R.D. 186, 198 (S.D.N.Y. 2005). *See also Barclays Order*, 2016 WL 7625708, at *2.

While "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997), courts in this District recognize that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions," *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).

As explained below, the Settlement is both substantively and procedurally fair and should be preliminarily approved.

- 7 -

**B.** **The Settlement is entitled to a presumption of fairness, adequacy and reasonableness since it was the product of arm's-length negotiations between experienced counsel.**

Where, as here, the proposed settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001); *see also In re CitiGroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("This presumption arises because if the negotiation process is fair 'the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides.'" (quoting *In re CitiGroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013))). "Further, 'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (Buchwald, J.) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125).

Both of these aspects are present here. First, Non-Defendant OTC Plaintiffs' Counsel are experienced antitrust litigators with significant experience in prosecuting and resolving these types of complex, multi-defendant, antitrust cases.  Greenfogel Decl. ¶ 6 (attaching Resumes from each Counsel).   Further, HSBC, itself one of the most sophisticated institutions in the world, is represented by reputable and highly experienced antitrust counsel. Second, the settlement negotiations between the Parties were vigorous, took place over a significant length of time and were conducted at arm's-length.  Greenfogel Decl. ¶ 4. In short, the Settlement is entitled to a "presumption of fairness, adequacy, and reasonableness." *See In re CitiGroup Inc. Bond Litig.*, 296 F.R.D. at 155.

**C.**   **When viewed through the lens of the *Grinnell* factors, the Settlement is substantively fair.**

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval stage, *Authors Guild v. Google, Inc.*, No. 05 CIV. 8136 (DC), 2009 WL 4434586, at *1 (S.D.N.Y. Dec. l, 2009), some courts have looked to the nine factors announced in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), at the preliminary approval stage (the "*Grinnell* factors"). The *Grinnell* factors are as follows:

> (l) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Not every factor must weigh in favor of settlement, "rather the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (citations and internal quotations omitted). As explained below, application of the *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlement. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6851096, at *2 ("In this instance, we grant the motion for preliminary approval, as there are enough factors to suggest that the Proposed Settlement is viable. First, the Proposed Settlement is the result of arm's-length negotiations. Second, it is reasonable to expect that the Exchange-Based Plaintiffs will benefit considerably from Barclays's cooperation in producing evidence to use against the many non-settling defendants. Third, to win an award without settling, the Plaintiffs must prove a factually complex case with genuine legal uncertainties.") (citation omitted).

- 9 -

1.      **The complexity, expense, and likely duration of the Litigation.**

Non-Defendant OTC Plaintiffs commenced this action over six years ago and, if the current appeals are successful, it will likely last much longer. And, like most complex antitrust cases, this case has been the subject of many significant motions, appeals and expense. *See Wal-Mart Stores*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). Even if the Second Circuit issues a favorable ruling for plaintiff-appellants (which will likely then be favorable to Non-Defendant OTC Plaintiffs) in the *Gelboim* appeal, the Non-Defendant OTC Plaintiffs still face significant litigation hurdles such as class certification, merits discovery, expert discovery, summary judgment, and a long trial, from which the losing party will almost certainly appeal. *See, e.g., In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008) ("The costs and duration of . . . conducting merits . . . discovery, conducting expert discovery, litigating a motion for summary judgment, preparing for trial, conducting the trial itself, filing post-trial motions, and pursuing any appeals would vastly exceed the substantial time and money already spent."); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (estimating that trial in a complex antitrust class action "could consume over a year").  There will also be additional complexity because of the necessity of "netting" to determine actual damages, which the Court has already held will be a complex inquiry (*see, e.g.,* ECF No. 715, p. 322) and has reserved judgement on whether even more extensive forms of netting may be required. ECF No. 715, p. 209 n.114.  The first *Grinnell* factor supports preliminary approval.

2.      **The reaction of the Class to the Settlement.**

Because notice has yet to be provided to potential Class members, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See, e.g., Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of the[] [*Grinnell*] factors,

particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). Although analysis of this factor is premature, each of the representative Class Plaintiffs supports approval of this Settlement.  Greenfogel Decl. ¶ 5.

### 3.      The stage of the proceedings.

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Discovery need not be fully complete, or even under way, before a settlement can be approved. *See In re IMAX Secs. Litig.,* 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). "It is enough for the Parties to "have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *In re AOL Time Warner, Inc.,* 2006 WL 903236, at *10. Indeed, this Court has previously granted preliminary approval to several class settlements despite the fact that merits discovery has not yet begun. ECF No. 2048.

Numerous facts demonstrate that this *Grinnell* factor supports preliminary approval. First, the Parties have received several lengthy rulings from the Court on the viability of their claims, including viability of class certification. *See* ECF Nos. 286; 389; 568; 1164; 1234; 1380; 1676; *see also In re IMAX Secs. Litig.*, 283 F.R.D. at 190 (noting that the case had "been pending for almost six years"). Second, the Parties have received guidance from the Second Circuit regarding the viability of the antitrust claims—with a second appeal to the Second Circuit currently pending. Third, Non-Defendant OTC Plaintiffs have undertaken extensive legal analysis of their claims and the reasonable value of the case. Fourth, Non-Defendant OTC Plaintiffs' Counsel engaged an economic

expert to better understand the LIBOR market and the potential harm inflicted on the Class. Fifth, the settlement negotiations were accompanied by frank discussions of the relative strengths and weaknesses of the Parties' claims and defenses.  Greenfogel Decl. ¶ 4.  The understanding gained through these various endeavors have provided Non-Defendant OTC Plaintiffs' Counsel with a comprehensive understanding of the relative strengths and weaknesses of their case that has enabled OTC Plaintiffs' Counsel to negotiate a settlement believed to be an excellent result for the Class. *Id.* ¶ 35. This third *Grinnell* factor supports preliminary approval of the Settlement.

### 4.    The risks of establishing liability and damages.

A settlement cannot be evaluated in a vacuum; it must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003). Antitrust claims are, in general, very fact-intensive. Here, the Defendants operate in the complex LIBOR market, and Plaintiffs' proof will include substantial documentary evidence and expert testimony. The Settlement secures the cooperation of HSBC that will improve Plaintiffs' ability to prove their claims at trial.

This litigation presents the Court, the parties, and eventually, a jury, with the task of understanding extremely complex derivative instruments in an opaque, unregulated market. *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (in assessing risks, courts recognize that "'[t]he complexity of Plaintiff's claims *ipso facto* creates uncertainty'") (citation omitted), *aff'd*, 405 F. App'x 532 (2d Cir. 2010); *see also* 31 No. 7 Futures & Derivatives L. Rep. 1 ("Derivative instruments, in most cases, are highly complex and difficult to understand for even highly sophisticated and intelligent investors."). This makes proving liability and damages, both of which would have required the assistance of experts, even riskier.

Additional risk is created by the fact that HSBC and the non-settling Defendants have significant litigation resources and are represented by some of the best law firms in the United

States. Absent settlement, HSBC is certainly prepared to vigorously contest its liability and damages. Most importantly, HSBC has already been dismissed from the litigation on personal jurisdiction grounds—highlighting the risk of even having the opportunity to prove liability and damages.  Even assuming the Non-Defendant OTC Plaintiffs can establish HSBC's liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476. In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. Pension Plan v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).

The fourth *Grinnell* factor weighs in favor of the Settlement.

### 5.     The risks of maintaining the Class Action through trial.

Although the Court certified a class with respect to OTC Plaintiffs' antitrust claims—and given Non-Defendant OTC Plaintiffs rely on the same antitrust theory, their claims would likely also be certified—the relevant non-settling Defendants have filed an appeal pursuant to Rule 23(f). Assuming certification is upheld by the Second Circuit, the Court retains the ability to review and modify the grant of certification at any point prior to trial, such that the risk of maintaining the class through trial is never 100% certain. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."); *see also In re IMAX Secs. Litig.*, 283 F.R.D. at 191 (noting that "if insurmountable management problems were to develop at any point, class certification can be revisited at any time" (quoting *NASDAQ III*, 187 F.R.D. at 476)). This being the case, the fifth *Grinnell* factor weighs in favor of preliminary approval.

- 13 -

745570.1

6.      **The ability of HSBC to withstand a greater judgment.**

While HSBC could withstand a greater judgement than the $4.75 million it will pay to end this case, this alone is not a sufficient reason for the Court to decline preliminary approval of the Settlement. *In re IMAX Secs. Litig.*, 283 F.R.D. at 191 ("[T]his factor, standing alone, is not sufficient to preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving a settlement."). In any event, a $4.75 million settlement payment plus HSBC's promised cooperation is very meaningful. Moreover, application of the other *Grinnell* factors weighs strongly in favor of preliminary approval such that consideration of this factor alone does not militate against granting preliminary approval of the settlement. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("Moreover, the benefit of obtaining the cooperation of the Settling Defendant[] tends to offset the fact that [it] would be able to withstand a larger judgment."); *see also Barclays Order*, 2016 WL 7625708, at *2 (noting with approval "the intangible benefit of cooperation against the non-settling defendants" in granting preliminary approval of the Barclays Settlement); *In re CitiGroup Inc. Bond Litig.*, 296 F.R.D. at 157 (approving settlement with Citigroup Inc., one of the settling defendants, though "Citigroup could likely withstand a greater judgment"); *In re IMAX Secs. Litig.*, 283 F.R.D. at 191 ("But a defendant is not required to 'empty its coffers' before a settlement can be found adequate." (quoting *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May l, 2008))).

7.      **The reasonableness of the Settlement in light of the best possible recovery and the attendant risks of litigation.**

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In applying these factors, "[t]he adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the

- 14 -

strengths and weaknesses of plaintiffs' case." *In re IMAX Secs. Litig.*, 283 F.R.D. at 192 (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011)); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2, *see also In re IMAX Secs. Litig.*, 283 F.R.D. at 191 ("[T]he Second Circuit 'has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.'" (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. supp. 1099, 1103 (S.D.N.Y. 1989))).

Continuing this litigation against HSBC would, as outlined above, necessitate the expenditure of countless hours and dollars over several more years with no guarantee that the Non-Defendant OTC Plaintiffs would ever be able to establish liability and prove damages. These risks are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

In contrast, this Settlement provides the Non-Defendant OTC Class with cash compensation ($4.75 million) and substantial cooperation. Settlement, ¶ 14. HSBC's cooperation to the Class is very valuable. HSBC will provide attorney proffers, transactional data, documents and testimony that will assist Plaintiffs in their continued litigation against the non-settling Defendants. *See Barclays Order*, 2016 WL 7625708, at *2 (noting "the intangible benefit of cooperation against the non-settling defendants"). The HSBC cooperation provisions in the Settlement strongly weigh in favor of preliminary approval. *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL

- 15 -

2093, at *16 (S.D. Tex. June 4, 1981) ("The cooperation clauses constituted a substantial benefit to the class."), *aff'd*, 659 F.2d 1322 (5th Cir. 1981).

In sum, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlement.

## V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Non-Defendant OTC Plaintiffs respectfully request that the Court certify the following class (the "HSBC Settlement Class") for settlement purposes:

> All Persons that purchased or otherwise acquired in the United States from a Non-Defendant OTC Financial Institution a U.S. Dollar LIBOR-Based Instrument and that owned such instrument any time during the Class Period.

Settlement, ¶ 3(a).

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).

The Court recently certified the OTC plaintiff litigation class with respect to similar antitrust claims. ECF. No. 2452. For the reasons set forth in the Court's certification opinion and the reasons set forth below, the proposed HSBC Settlement Class more than satisfies the requirements for certification of a settlement class.

### A.     Rule 23(a) requirements

#### 1.     Rule 23(a)(1) - Numerosity

Numerosity is presumed in this Circuit where a class consists of 40 or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90-91 (S.D.N.Y. 2009). Non-Defendant OTC Plaintiffs' Counsel estimate

- 16 -

that there at least hundreds, more likely thousands, of Class members. Accordingly, the numerosity requirement is easily met here.

### 2.  Rule 23(a)(2) - Commonality

To satisfy commonality, class members' claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Comm'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). It thus "is not the law" that "a common question must be common to every class member." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (citing *Johnson*, 780 F.3d at 137).

Non-Defendant OTC Plaintiffs' claims present numerous common issues of law and fact, including: whether the panel banks suppressed LIBOR during the Class Period; whether panel banks conspired to suppress LIBOR; whether the panel banks' conduct violates the Sherman Act; and the appropriate measure of damages for the harm sustained by Non-Defendant OTC Plaintiffs and members of the class. Accordingly, the commonality requirement is satisfied.

### 3.  Rule 23(a)(3) - Typicality

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (citation and internal quotations omitted). Small differences do not defeat typicality, "[r]ather,

- 17 -

a plaintiff fails to meet Rule 23(a)'s typicality requirement if its claims are 'subject to unique defenses which threaten to become the focus of the litigation.'" *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

The Non-Defendant OTC Class Representatives and Class members all assert the same antitrust claim that arises from the Defendant panel banks' unlawful suppression of LIBOR, and the injury resulting from that conduct. Thus, the typicality requirement is satisfied.

### 4.     Rule 23(a)(4) – Adequacy

"'The adequacy requirement is satisfied where: (l) there is no conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Atwood v. Intercept Pharms., Inc.*, 299 F.R.D. 414, 416-17 (S.D.N.Y. 2014) (quoting *Casper v. Song Jinan*, No. 12 Civ. 4202 (NRB), 2012 WL 3865267, at *2 (S.D.N.Y 2012)); *see Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (class representatives "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members"). "A conflict 'between named parties and the class they seek to represent' will be sufficient to defeat class certification only if the conflict is 'fundamental.'" *Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470 (JAM), 2017 WL 985640, at *12 (D. Conn. Mar. 13, 2017) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

No fundamental conflict exists between the Class Representatives and members of the Class where the Class Representatives hold the same valuable monetary claims—ensuring vigorous advocacy of those claims. Further, Non-Defendant OTC Plaintiffs' Counsel are experienced antitrust litigators with significant experience in prosecuting and resolving these types of complex,

multi-defendant, antitrust cases.  Greenfogel Decl. ¶ 6. The adequacy of representation requirement is satisfied.

###     B.     Rule 23(b)(3) requirements

####         1.     Predominance

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting W. Rubenstein, *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005)); *Johnson*, 780 F.3d at 138 ("Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof.") (citing *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006)). "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

The Court recently found common questions to predominate as to antitrust claims in the OTC Action. ECF No. 2452 at 332 299, F.Supp. 3d 430, 595 (S.D.N.Y. 2018). The Non-Defendant OTC Plaintiffs' antitrust claims are identical to the OTC Action and predicated on the same theory of liability, impact and damages as that in the OTC Action. The financial instruments at issue are the

- 19 -

same *types* of instruments (interest rate swaps, etc.) at issue in the OTC Action. The only

difference—and not relevant to class certification—is that the Non-Defendant OTC Plaintiffs

purchased a LIBOR-based instrument from the previously identified Non-Defendant Financial

Institutions. For those reasons, the predominance requirement is also met for the Settlement Class.

*See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer

or securities fraud or violations of the antitrust laws."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*,

169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Since a single conspiracy is alleged, the relevant proof of this

will not vary among class members, and clearly presents a common question fundamental to all class

members."); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 26 (D. Conn. 1975) (characterizing

question of the existence of a conspiracy as "the central and common element of these cases");

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) (en banc) (Scirica, J., concurring) ("Issues of

predominance and fairness do not undermine this settlement. All plaintiffs here claim injury that by

reason of defendants' conduct [ ] has caused a common and measurable form of economic damage

… All claims arise out of the same course of defendants' conduct; all share a common nucleus of

operative fact, supplying the necessary cohesion. Class members' interests are aligned … [S]hared

issues of fact or law outweigh issues not common to the class and individual issues do not

predominate.").

### 2.    Superiority

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Importantly, courts considering motions to certify settlement classes need not consider the forth factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.").

Accordingly, the superiority requirement is satisfied and Non-Defendant OTC Plaintiffs have satisfied the requirements for certification of a settlement class.

### C. Non-Defendant OTC Plaintiffs' Counsel should be appointed settlement class counsel.

Under Rule 23(g), a court that certifies a class must appoint class counsel who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(l). In determining class counsel, the Court must consider: (l) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(l)(A). Non-Defendant OTC Plaintiffs' Counsel: Freed Kanner London & Millen LLC; Hagens Berman Sobol Shapiro LLP; Heins Mills & Olson, P.L.C.; and Lite DePalma Greenberg LLC readily meet these requirements (Greenfogel Decl.¶ 6) and should be appointed as counsel for the Settlement Class.

## VI. PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF DISTRIBUTION

Non-Defendant OTC Plaintiffs are committed to the Net Settlement Fund being distributed in a reasonable and equitable fashion to members of the Class. Non-Defendant OTC Plaintiffs have not yet received all the necessary data or customer lists requested in the recently served Non-Defendant OTC Financial Institution subpoenas that will form the basis of a Notice Plan and Plan of Distribution. As such, Non-Defendant OTC Plaintiffs respectfully propose to file a separate Motion for Approval of the Plan of Distribution and Form and Manner of Notice of the Settlement

745570.1

Agreement at a later date. At that time, Class Counsel will recommend to the Court a proposed Plan of Distribution and Notice Plan, which is anticipated to be the same type as was used in the OTC Action. Non-Defendant OTC Plaintiffs anticipate filing this motion as soon as practicable after receiving the information from the subpoenaed banks.

As a practical matter, that means the notice and claim form that will issue to Class members will include a description of the case, the terms of the settlement, and the mechanism and plan of distribution, sufficient for Class members to intelligently and meaningfully participate, object, opt-out or otherwise comment on the settlement while avoiding confusion caused by multiple rounds of notice. Other courts have permitted this course of action in similarly complex cases. This Court previously approved such a course of action with respect to the Barclays Settlement, *see Barclays Order*, 2016 WL 7625708, at \*3, and other courts have permitted this course of action in similarly complex cases, *see, e.g., In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-CV-07789-LGS, 2015 WL 9952596, at \*3 (S.D.N.Y. Dec. 15, 2015) (the Honorable Lorna G. Schofield preliminarily approved a settlement with a separate notice procedure nearly identical to the procedure proposed here); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG) (VVP), 2013 WL 4525323, at \*5 (E.D.N.Y. Aug. 27, 2013) (the Honorable John J. Gleeson preliminarily approved the first ten partial settlements prior to formulating or proposing any plan of distribution).

## VII.   CONCLUSION

For the foregoing reasons, Non-Defendant OTC Plaintiffs respectfully request the Court grant their motion for preliminary approval of the HSBC Settlement, certify the Settlement Class and appoint Settlement Class Counsel.

745570.1

Dated:  July 27, 2018

Respetfully submitted,
**LITE DEPALMA GREENBERG LLC**

*/s/ Steven J. Greenfogel*
Joseph J. DePalma
Steven J. Greenfogel
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 877-3810
jdepalma@litedepalma.com

*Counsel for plaintiff 33-35 Green Pond Road Associates, LLC and the proposed class*

Jason A Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, Suite 1700
New York, NY 10017
Tel: (708) 628-4958
jasonz@hbsslaw.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave., Suite 3300
Seattle, Washington 98101
Tel: (206) 623-7292
steve@hbsslaw.com

*Counsel for plaintiffs Courtyard at Amwell II, LLC, Greenwich Commons II, LLC, Jill Court Associates II, LLC, Maidencreek Ventures II LP, Raritan Commons, LLC, and Lawrence W. Gardner and the proposed class*

William H. London
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Tel: (224) 632-4504
blondon@fklmlaw.com

Vincent J. Esades
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, Minnesota 55403
(612) 338-4605
vesades@heinsmills.com
*Counsel for plaintiff 33-35 Green Pond Road Associates, LLC and the proposed class*

- 23 -

745570.1